IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 15, 2013

## YOVONDA S. CHAMBERS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Williamson County**
**No. CR056483    Timothy L. Easter, Judge**

_____

**No. M2012-02288-CCA-R3-PC - August 13, 2013**

_____

The Petitioner, Yovonda S. Chambers, pled guilty to one count of identity theft and agreed to allow the trial court to determine sentencing. Pursuant to the plea agreement, the State entered a *nolle prosequi* as to a second count of identity theft. After a sentencing hearing, the trial court sentenced the Petitioner to four years to be served on intensive probation. The Petitioner timely filed a petition seeking post-conviction relief on the basis of ineffective assistance of counsel, which the post-conviction court denied after a hearing. The Petitioner appeals the post-conviction court's denial, claiming that her attorney failed to adequately investigate the case, discuss the case with the Petitioner, and properly prepare for sentencing. After a thorough review of the record, the briefs, and relevant authorities, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and ROGER A. PAGE, JJ., joined.

Matthew J. Crigger, Franklin, Tennessee, for the Appellant, Yovonda S. Chambers.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel, Criminal Justice Division; Kim R. Helper, District Attorney General; and Mary Katharine White, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

The Petitioner timely filed a post-conviction petition, claiming that she received the ineffective assistance of counsel. The Petitioner asserts on appeal that her attorney

("Counsel") failed to: (1) adequately investigate the charges; (2) review discovery with her; (3) explain her sentence; and (4) prepare for the sentencing hearing.

The Defendant has failed to provide a transcript of the guilty plea submission hearing. The indictments, which are included in the record, provide the following as to Count 1:

> The Grand Jurors for Williamson County, Tennessee, duly impaneled and sworn, upon their oath, present that YOVONDA S. CHAMBERS, heretofore, to-wit, in January of 2009, inclusive, before the finding of this presentment, in said County and State, unlawfully, knowingly and feloniously did use personal identification of another person to wit: Erin Chambers, on a lease application, with the intent to commit any unlawful activity, without the consent of such person, in violation of Tennessee Code Annotated 39-14-150, a class D felony, and against the peace and dignity of the State of Tennessee.

As to Count 2, the indictment provides the following:

> The Grand Jurors for Williamson County, Tennessee, duly impaneled and sworn, upon their oath, present that YOVONDA S. CHAMBERS, heretofore, to-wit, in January of 2009 and March of 2009, inclusive, before the finding of this presentment, in said County and State, unlawfully, knowingly and feloniously did use personal identification of another person to wit: Erin Chambers, to subscribe to Direct TV, with the intent to commit any unlawful activity, without the consent of such person, in violation of Tennessee Code Annotated 39-14-150, a class D felony, and against the peace and dignity of the State of Tennessee.

At the hearing on the petition, the parties presented the following evidence: Counsel testified that he had been practicing law for twenty-five years, and his practice was mostly comprised of criminal cases. Counsel recalled that the Petitioner contacted him several months before her court appearance seeking representation but did not actually retain him until shortly before her August 2011 court appearance.

Counsel testified that the State made a plea agreement offer that required one year to serve followed by probation. Counsel conveyed the offer, and the Petitioner declined, believing she could "do better" at a sentencing hearing. The Petitioner pled guilty, with the trial court to determine the manner of service of an agreed sentence. Counsel testified that he could not recall the term of probation, but he said that the sentence did not involve incarceration. Counsel said that he spoke with the Petitioner on "several occasions," both in person and by telephone, leading up to the guilty plea submission hearing. He recalled

that, on at least one occasion, the Petitioner met with him at his office.

Counsel testified that he was aware the Petitioner had additional cases in Rutherford County. He said the cases were related to the Petitioner's use of a false identity when entering a lease agreement.

Counsel said that the Petitioner's position, from the time he first met with her, was that she was guilty as to the first count of the indictment but was not guilty as to the second count. Counsel said that, despite her admissions, he still wanted to review the State's discovery to determine if he could formulate a reasonable doubt defense. After reviewing the State's discovery and determining the State had "a very strong case" involving an "outright confession," he reviewed the evidence with the Petitioner. The Petitioner raised concern about whether the Williamson County indictments violated double jeopardy protections and, after further investigation, Counsel "pretty quickly rejected that."

Counsel testified that his strategy at the sentencing hearing was for the Petitioner to take full responsibility for the offense and then for Counsel to demonstrate that the Petitioner was a good candidate for probation based upon her willingness to be accountable, the fact that she had no prior record, and that she was gainfully employed. Counsel said that the Petitioner was the only witness he called to testify at the sentencing hearing.

On cross-examination, Counsel agreed that he effectively negotiated dismissal of Count Two of the indictment, which was the charge that the Petitioner contested. Counsel agreed that the outcome of the sentencing hearing was that the Petitioner received a full probation sentence with no time to serve in jail. Counsel said that, during his representation of the Petitioner, her primary concern was avoiding the service of jail time. Counsel explained his reason for rejecting double jeopardy as a defense. He said that, while the Rutherford County incidents involved the same victim, the Williamson County incidents and the Rutherford County incidents were separate and distinct criminal acts. He said that the incidents occurred in different jurisdictions, on different dates, and involved entirely different actions by the Petitioner.

Counsel testified that one of the exhibits at the sentencing hearing was the Petitioner's handwritten statement admitting use of a false identity to obtain a rental lease. Counsel said that he believed there was no basis upon which to request suppression of the statement.

The Petitioner testified that she worked in the mail room at Vanderbilt Hospital. She said that she had completed three years of college but had no "formal legal training." The Petitioner said that she contacted Counsel in June 2011 seeking representation for the Williamson County charges. Although she met with Counsel in June, she did not retain him

until the beginning of August 2011. The Petitioner recalled that she met with Counsel only one time during his representation. During this initial meeting, she asked Counsel about double jeopardy issues and, she told him about the Rutherford County cases.

The Petitioner testified that Counsel never conveyed an offer to serve one year to her. She testified that on her August 9, 2011 court date, Counsel stepped out in the hall with her, briefly discussed the discovery, and told her he was negotiating a settlement. The Petitioner testified that Counsel told her what she would plead guilty to before they went into the courtroom for the guilty plea submission hearing. She said that she had "no idea" what it meant to enter an "open plea." When asked if Counsel explained the term to her, she stated the following:

> No, I think he just told me information that he felt as though I needed to know, and I didn't ask any questions, pretty much per se, because I didn't know what type of questions to really ask for, you know? He just - - he was in such a crunch for time, you know, just wasn't, you know, he didn't give me too much information to elaborate on a lot of things to explain a lot of things in full detext (sic) for my understanding.

She said that her discussion with Counsel before she pled guilty was "two minutes or so."

The Petitioner testified that she did not meet with Counsel between her guilty plea submission hearing and the sentencing hearing but that she did speak with him on the telephone. She said he did not discuss with her the consequences of her testifying at the sentencing hearing or the possibility that convictions can be used to enhance a sentence on subsequent charges.

On cross-examination, the Petitioner agreed that she signed the plea negotiation paperwork and stipulation. The Petitioner said that she did not review the documents she signed but that she did understand her rights as explained to her by the trial court at the time of her guilty plea. Upon further questioning, the Petitioner agreed that, during the guilty plea submission hearing, she told the trial court that Counsel reviewed the plea negotiation paperwork with her. She then said, "So, yeah, I did actually go over that with my attorney." The Petitioner further agreed that she told the trial court during the plea colloquy that she was satisfied with Counsel's representation. She denied that her "goal" was a probation sentence and clarified that her "goal" was to have the cases dismissed on the basis of double jeopardy violations.

The Petitioner testified that both Counsel and another attorney told her that her cases did not present a valid double jeopardy defense. She agreed that she chose to retain Counsel

after he had already told her that there were no double jeopardy grounds upon which to challenge her charges. She further agreed that she also chose to enter a guilty plea. Despite this, the Petitioner maintained that her "goal" when retaining Counsel had not changed. When asked in what way Counsel had not represented her well, the Petitioner stated that she did not "feel" that Counsel "spent enough time of investigating information."

After the proof, the trial court orally made the following findings:

> The Court finds, based upon the proof of [Counsel], as well as [the Petitioner], that she has failed to establish this claim by clear and convincing evidence. There is insufficient evidence presented here today that the Court should make an exception to any rule governing the rules of post-conviction relief.

> The evidence that's before the Court today is that there's nothing that [Counsel] could have done that would have changed the outcome of [the Petitioner's] conviction as to Count One. It's clear from the proof, from her testimony, that she confessed, made statements to law enforcement regarding that issue. I'm satisfied that the claim of double jeopardy and that perhaps Count One occurred in another county is not supported either by the proof in the original file, [Counsel]'s testimony, or for that matter, [the Petitioner's] testimony.

> All disputed issues presented by the [P]etitioner today, and in her pleadings, are found to be resolved in favor of [Counsel]. Any discrepancies between their two testimonies, the Court finds [Counsel] to be the more credible witness and resolves all issues in his favor. The Court cannot find, by clear and convincing evidence, that [Counsel]'s performance was deficient. Under the circumstances and facts, and the overwhelming, frankly, evidence in this case, the Court finds that [Counsel] did the job that an attorney of his caliber should do in representing the [P]etitioner. She has failed to demonstrate to the Court that [Counsel] made errors so serious that the attorney was not functioning as counsel guaranteed under the Sixth Amendment of the United States Constitution, and that his deficient representation prejudiced her in any way resulting in a failure to produce a reliable result.

Based on these findings, the post-conviction court denied the petition. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that she received the ineffective assistance of counsel. Specifically, she asserts that Counsel failed to: (1) adequately investigate the case; (2) adequately discuss discovery with the Petitioner; (3) properly advise the Petitioner about the consequences of an open guilty plea; and (4) properly prepare for the sentencing hearing. The State responds that the Petitioner has failed to prove her factual allegations by clear and convincing evidence and that, therefore, the post-conviction court should be affirmed. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2012). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2012). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland,* 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad,* 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

The State correctly points out the Petitioner has failed to include the transcripts from the guilty plea submission hearing and the sentencing hearing. We note that defendants have a duty to prepare a record that conveys "a fair, accurate and complete account of what transpired with respect to the issues which form the basis of the appeal" and will enable the appellate court to decide the issues. Tenn. Rule App. P. 24(a); *see State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999).

> It is well-established that an appellate court is precluded from considering an issue when the record does not contain a transcript or statement of what transpired in the trial court with respect to that issue. Moreover, the appellate court must conclusively presume that the ruling of the trial judge was correct, the evidence was sufficient to support the defendant's conviction, or the defendant received a fair and impartial trial. In summary, a defendant is effectively denied appellate review of an issue when the record transmitted to the appellate court does not contain a transcription of the relevant proceedings in the trial court.

*State v. Draper*, 800 S.W.2d 489, 493 (Tenn. Crim. App. 1990). While we acknowledge the deficiencies in the record, it provides a sufficient amount of information for us to review the issues presented.

Our review of the record reveals that the evidence does not preponderate against the trial court's findings. The Petitioner never denied guilt as to Count One of the indictment. Her handwritten statement to police, discussions with Counsel, and statement for the presentence report all reflect her admission of guilt as to Count One. Her handwritten statement and statements to Counsel reflect that she denied guilt as to Count Two, the charge for which Counsel successfully negotiated a dismissal.

Counsel reviewed the discovery and found the State had a "strong case," which included the Petitioner's handwritten admission to police. The trial court credited Counsel's testimony that he spoke with the Petitioner regarding the case on several occasions and reviewed the discovery with her.

As to the Petitioner's contention that Counsel failed to explain what it meant to enter an open plea, Counsel said that the Petitioner believed her chances were better at the sentencing hearing than the State's offer of one year to serve. Moreover, the results at the sentencing hearing were, in fact, more favorable to the Petitioner in that she avoided a jail sentence. Furthermore, the Petitioner's testimony at the hearing belie her assertion that Counsel did not review her sentence with her. After denying reading the plea agreement documents, she acquiesced that Counsel did review her guilty plea agreement with her. Her

understanding of the guilty plea agreement is also evidenced by her signature on the guilty plea agreement paperwork and dialogue with the trial court during the plea colloquy as read by the State during the post-conviction hearing cross-examination of the Petitioner. Finally, the evidence showed that Counsel planned a reasonable strategy for the sentencing hearing and was able to obtain for the Petitioner a fully probated sentence.

We conclude that the post-conviction court did not err when it denied relief. The Petitioner failed to show that Counsel's representation was ineffective and that she was prejudiced by Counsel's representation. The Petitioner is not entitled to relief.

## II. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the post-conviction court properly denied post-conviction relief. Accordingly, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE